United States District Court
Southern District of Texas

**ENTERED**

October 19, 2023

Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| PARTY FAVORS, LLC, §<br>§<br>§<br>Plaintiff, §<br>v. §<br>§<br>MARINEMAX EAST, INC. *and* §<br>ENDEAVOR MARINA ON CLEAR §<br>LAKE, LP, §<br>§<br>Defendants. § | CIVIL ACTION NO. H-23-2794 |

**MEMORANDUM AND ORDER**

Party Favors, LLC sued MarineMax East, Inc. for damages stemming from breach of contract, violations of the Texas Deceptive Trade Practices Act, and constructive eviction, and sued Endeavor Marina on Clear Lake, LP, for promissory estoppel. (Docket Entry No. 1).  Party Favors sued in state court and MarineMax removed, alleging that Endeavor, the sole nondiverse defendant, was improperly joined. (Docket Entry No. 1 at 3).  Party Favors moved to remand, arguing that Endeavor was properly joined. (Docket Entry No. 5 at 1).  MarineMax responded and moved to dismiss all causes of action for failure to state a claim. (Docket Entry Nos. 2, 7).  Party Favors responded, and MarineMax replied. (Docket Entry Nos. 4, 6).

Based on the parties' briefs, the record, and the relevant law, the court denies the motion to remand and grants in part and denies in part the motion to dismiss. The reasons for these rulings are set out below.

**I.    Background**

On March 8, 2022, Party Favors, LLC entered into a commercial lease (the "Lease") with Endeavor. The Lease stated that the "[p]remises shall be used and occupied only for Office Space

for Party Favors, LLC Business." (Docket Entry No. 1-9 at 3). The Lease also stated that it contained "all agreements of the parties with respect to any matter mentioned herein. No prior agreement . . . shall be effective. . . . This Lease may be modified in writing only, signed by the parties in interest at the time of the modification." (*Id.* at 16).

After signing the Lease, Party Favors and Endeavor had multiple conversations about whether Party Favors could use the leased premises for a catering and bartending business and remodel the premises to install a commercial kitchen. (Docket Entry No. 1-2 at 3). On June 1, 2022, Party Favors submitted a permit application to the City of Seabrook to operate as a restaurant and bar. (*Id.*).   On June 7, 2022, Party Favors sent Endeavor the plans for the intended modifications to the leased premises, including installing a commercial kitchen. (*Id.*).   On June 8, 2022, an Endeavor representative signed and wrote "approved" on each page of the plans that Party Favor had submitted.   (Docket Entry No. 1-11 at 25–32).

In August 2022, MarineMax bought the property from Endeavor and became the new landlord. (Docket Entry No. 2 at 7).  In December 2022, MarineMax informed Party Favors that a commercial kitchen was not permitted under the Lease without the landlord's—MarineMax's—consent. (Docket Entry No. 6 at 12). Party Favors had already taken steps toward building the commercial kitchen and doing the related remodeling work.  In March 2023, MarineMax sent Party Favors a notice of Lease termination. (Docket Entry No. 1-2 at 7). In April 2023, Party Favors surrendered the premises and filed this damages lawsuit. (*Id.*).

II.     **The Legal Standards**

        A.      **Remand**

"To remove a case based on diversity, the diverse defendant must demonstrate that all of the prerequisites of diversity jurisdiction contained in 28 U.S.C. § 1332 are satisfied." *Smallwood*

*v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 572 (5th Cir. 2004) (en banc). "A case may be removed pursuant to 28 U.S.C. § 1332 if there is complete diversity of citizenship and the amount in controversy is greater than $75,000 exclusive of interests and costs." *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 183 (5th Cir. 2018).

"[I]f the plaintiff improperly joins a non-diverse defendant, then the court may disregard the citizenship of that defendant, dismiss the non-diverse defendant from the case, and exercise subject matter jurisdiction over the remaining diverse defendant." *Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016). "Improper joinder can be established in two ways: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Ticer v. Imperium Ins. Co.*, 20 F.4th 1040, 1045 (5th Cir. 2021). The Fifth Circuit has held that:

> [i]mproper joinder occurs when a plaintiff is unable "to establish a cause of action against the non-diverse party in state court." The test is whether there is "no possibility of recovery by the plaintiff against an in-state defendant" or "no reasonable basis for [predicting recovery] against an in-state defendant." To determine if there was improper joinder, the district court may conduct a Rule 12(b)(6)-type analysis, "looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder."

*Id.* at 1046 (footnotes and citations omitted).

"The burden of persuasion on those who claim improper joinder is a heavy one." *Davidson v. Georgia-Pacific, L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016) (alteration omitted) (quoting *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003)). "Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." *Manguno v. Prudential Prop. & Cas. Inc.*, 276 F.3d 720, 723 (5th Cir. 2002) (citing *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000)).

**B.**      **Rule 12(b)(6)**

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

To withstand a Rule 12(b)(6) motion, a complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Lincoln v. Turner*, 874 F.3d 833, 839 (5th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be

4

exposed at the point of minimum expenditure of time and money by the parties and the court."
*Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (alterations omitted) (quoting *Twombly*, 550
U.S. at 558).

A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set
forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial
notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys Project, Inc. v. Lincoln
Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

## III.   Analysis

### A.     The Motion to Remand

Party Favors argues that federal diversity jurisdiction is lacking because both Party Favors
and Endeavor are Texas citizens. (Docket Entry No. 5 at 1).  MarineMax responds that Endeavor
was improperly joined because the only claim against it, for promissory estoppel, fails as a matter
of law. (Docket Entry No. 7 at 1).

Neither party disputes that a commercial lease existed; that Party Favors was the tenant
and Endeavor was the original landlord; and that MarineMax succeeded Endeavor as the landlord
after purchasing the property from Endeavor. (Docket Entry Nos. 1, 2).  MarineMax argues that
the existence of a valid contract—the Lease—between Party Favors and Endeavor bars the
promissory estoppel claim. (Docket Entry No. 7 at 2).  Party Favors counters that Endeavor
promised Party Favors that it could build a commercial kitchen only after the Lease was executed,
meaning that the alleged promise was made separate from the Lease. (Docket Entry No. 5 at 7).
Party Favors alleges that it reasonably relied on Endeavor's promise to allow the installation of a
commercial kitchen and committed substantial resources to doing so. (Docket Entry No. 1-2 at
10).

The Lease between Party Favors and Endeavor stated that "the premises shall be used and occupied only for Office Space for Party Favors, LLC Business." (Docket Entry No. 1-9 at 3). The Lease also stated that it "contains all agreements of the parties with respect to any matter mentioned herein. No prior agreement . . . shall be effective. This Lease may be modified in writing only, signed by the parties in interest at the time of modification." (Docket Entry No. 1-9 at 16).

"In Texas, promissory estoppel is a three-element test: '(1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment.'" *Fric v. Allstate Life Ins. Co.*, --- F. Supp. 3d ---, 2023 WL 2652247, at *9 (S.D. Tex. Mar. 27, 2023) (quoting *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 686 n.25 (Tex. 2002)). "If, however, a valid contract between the parties encompasses the alleged promise, promissory estoppel is not applicable to that promise," *El Paso Healthcare Sys., Ltd. v. Piping Rock Corp.*, 939 S.W.2d 695, 699 (Tex. App.—El Paso 1997, writ denied), and the party must seek damages under the contract. In *El Paso Healthcare Sys. Ltd.*, the contract required that any amendment be made in writing. The court reasoned that because there was no written amendment in the record, a jury could determine that the conversations between the parties were "a new promise rather than a modification of the original Agreement." *El Paso Healthcare Sys., Ltd.*, 939 S.W.2d at 699.

In this case, the conversations between Party Favors and Endeavor relating to installing a commercial kitchen occurred after the Lease was signed, and resulted in Endeavor signing and approving the floor plans that Party Favors submitted for the commercial kitchen. Party Favors argues that it therefore had a right under the Lease to build the commercial kitchen. (Docket Entry No. 4 at 8–9). But in its motion to remand, Party Favors argues that the promise was "made outside the contract." (Docket Entry No. 5 at 5). MarineMax argues both that Party Favors is claiming

6

that "Endeavour's [sic] alleged promise modified the lease," precluding promissory estoppel, and that "no such modification existed anyway." (Docket Entry No. 7 at 4).

In support of its argument that there was a valid contract that was a complete defense against a promissory estoppel claim, MarineMax points to *Estate of Rashti v. Bank of Am. Nat'l Ass'n*, 782 F. App'x 322 (5th Cir. 2019), and *Fric*. In *Estate of Rashti*, the plaintiff asserted breach of contract and promissory estoppel. 782 F. App'x. at 322.  The Fifth Circuit held that because a contract between the parties covered the alleged promise on which the plaintiff detrimentally relied, the plaintiff could not recover under promissory estoppel. *Id.* at 327.  In *Fric*, the plaintiff sued his insurer, alleging that he had relied on the insurer's promise and asserting promissory estoppel. *Fric*, 2023 WL 2652247, at *9. The plaintiff had not provided evidence that the insurer made promises, orally or in writing, apart from the insurance contract. *Id.*  The court held that the plaintiff could not recover under promissory estoppel because there were no promises outside the insurance contract. *Id.* at *4, *9.  Applying these cases to the facts disclosed in the record, Endeavor's approval of the Party Favors remodeling plans served as a written modification of the Lease, precluding promissory estoppel.

The exchange between Endeavor and Party Favors included a written offer and acceptance, and consideration.  Endeavor signed the remodeling plans that Party Favors submitted, allowing Party Favors to build the commercial kitchen on the leased premises, which Party Favors did at its own expense. The parties' actions complied with the Lease modification requirements. The promissory estoppel claim fails because the alleged promise was contained in the parties' writings that modified the Lease.  Because Party Favors has alleged no other claim against Endeavor, there is no basis to join Endeavor as a party, leaving diversity intact. The motion to remand is denied.

### B.     The Motion to Dismiss

### i.   The Breach of Contract Claim

In Texas, the elements of a breach of contract claim are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Aguiar v. Segal*, 167 S.W.3d 443, 451 (Tex. App.—Houston [14th Dist.] 2005, no pet). A breach of contract claim "must contain a short statement of the cause of action sufficient to give fair notice of the claim involved, including an allegation of a contractual relationship between the parties, and the substance of the contract which supports the pleader's right to recover." *Bayway Servs., Inc. v. Ameri-Build Const., L.C.*, 106 S.W.3d 156, 160 (Tex. App.—Houston [1st Dist.] 2003, no pet).

MarineMax moves to dismiss Party Favors's breach of contract claim on the grounds that it relies on pre-contract statements between Party Favors and the previous landlord and that there is no written contract addressing the commercial kitchen. (Docket Entry No. 2 at 17).  MarineMax argues that the Lease "contains all agreements of the parties with respect to any matter mentioned herein," and that "no prior agreement or understand[ing] pertaining to any such matter shall be effective." (Docket Entry No. 1-9 at 16). Party Favors argues that its breach of contract claim does not rely on statements made before the Lease was in place and that, under the Lease, Party Favors had secured Endeavor's written consent to modify the premises to be a commercial kitchen. (Docket Entry No. 4 at 8).

MarineMax cannot have it both ways.  MarineMax cannot both claim that the promissory estoppel claim is foreclosed by the existence of a contract covering the commercial kitchen and claim that there was no contract covering the kitchen.  The use of the leased property is addressed in § 6 of the Lease, which states that "the premises shall be used and occupied only for Office

8

Space." (Docket Entry No. 1-9 at 3). Section 16.7 of the Lease states that it may be modified "in writing only, signed by the parties in interest at the time of modification." (*Id.* at 16). The Lease was modified by a written agreement between Endeavor and Party Favors. Although MarineMax argues that Party Favors is impermissibly relying on promises made before the Lease was signed, (Docket Entry No. 2 at 13), Party Favors has clarified that the Lease was signed in March 2022, and the agreement to modify the Lease by approving the plans to add the commercial kitchen was made in June 2022. (Docket Entry No. 4 at 8). MarineMax does not dispute these dates in its reply.

Endeavor gave its written approval of the plans to modify the leased space after the Lease was signed and after MarineMax became the property owner and the Party Favors lessor. There is a factual dispute material to determining whether the signed remodeling plans validly modified the Lease and were binding on MarineMax. In its briefs, MarineMax suggests that Endeavor did not inform it of the Lease modification, (Docket Entry No. 7 at 4), but that is disputed. At this stage in the proceedings, dismissal is not appropriate.

ii.     **The Deceptive Trade Practices Act Claim**

The elements of a Texas DTPA cause of action are: "(1) the plaintiff is a consumer; (2) the defendant committed acts in connection with the purchase or lease of any goods or services; (3) the defendant's acts were false, misleading or deceptive; and (4) the acts were a producing cause of the plaintiff's injuries." *Mcgregor v. Lowe's Cos. Inc.*, No. 4:19-CV-03300, 2022 WL 19404022, at *4 (S.D. Tex. 2022) (internal quotation omitted). The economic-loss rule limits plaintiffs to recover damages when "the loss is the subject matter of a contract between the parties." *Id.* Alternatively, when the injury gives rise to a liability that is independent of the existing contract between the parties, the plaintiff's claim may also sound in tort. *Id.*

Party Favors argues that MarineMax's refusal to honor Party Favors's Lease modification agreement with Endeavor was actionable under the DTPA, and that Party Favors has suffered damages as a result. (Docket Entry No. 1-2 at 9).  MarineMax argues that it did not misrepresent the Lease terms and that Party Favors merely disagrees with MarineMax's interpretation of the Lease. (Docket Entry No. 2 at 9).  In addition, MarineMax argues that under the economic-loss doctrine, Party Favors may seek only a contract—not tort—remedy. (*Id.*).  Party Favors responds that the basis of its DTPA claim is MarineMax's representations that Party Favors was not entitled to build a commercial kitchen under the Lease, and that the breach of contract claim against MarineMax is a separate, distinct claim. (Docket Entry No. 4 at 4).

The court agrees with MarineMax. If a DTPA claim "amount[s] to an allegation that [the Defendant] breached the [parties'] contract," dismissal of the claim is appropriate.  *Shakeri v. ADT Sec. Servs., Inc.*, 816 F.3d 283, 295 (5th Cir. 2016).  Party Favors claims that MarineMax misrepresented that Party Favors could build a commercial kitchen; that is a dispute over the interpretation of the Lease contract as modified.

Party Favors cites *Hilburn v. Storage Tr. Properties*, in which the plaintiff's rented storage unit flooded, damaging the stored property. 586 S.W.3d 501, 501 (Tex. App.—Houston [14th Dist.] 2019, no pet.). After the flood, the parties discussed the best way to dispose of the damaged property, but they did not reach an agreement. *Id.* at 505.  The defendant lessor then disposed of the plaintiff's property, and the plaintiff sued for breach of contract and violations of the DTPA. *Id.* The court allowed the DTPA claim to proceed on the basis that "a party states a noncontractual claim when the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit." *Id.* at 508.  In that case, the

10

contract for the storage unit did not discuss the defendant possessing or disposing of the plaintiff's property, and so did not implicate the parties' dispute.

Here, the use of the premises that Party Favors leased is addressed in § 6 of the Lease, which states that "the premises shall be used and occupied only for Office Space." (Docket Entry No. 1-9 at 3). Modifications are addressed under § 16.7, which states that the Lease may be modified "in writing only, signed by the parties in interest at the time of modification." (*Id.* at 16). The Lease was modified under § 16.7. The losses that Party Favors alleges are directly addressed by the Lease provisions. When "'the only loss or damage' that a plaintiff has suffered 'is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract.'" *AXA Art Americas Co. v. Pub. Storage*, 208 F. Supp. 3d 820, 826 (S.D. Tex. 2016) (quoting *S.W. Bell Tel. Co. v. Delanney*, 809 S.W.2d 493, 494–95 (Tex. 1991). Party Favors fails to show that MarineMax breached a duty independent of the Lease that would give rise to a DTPA violation.

MarineMax's motion to dismiss the DTPA claim is granted.

### iii.    The Constructive Eviction Claim

"Constructive eviction requires: '(1) an intention of the part of the landlord that the tenant shall no longer enjoy the premises; (2) a material act by the landlord that substantially interferes with the tenant's intended use and enjoyment of the premises; (3) the act permanently deprives the tenant of the use and enjoyment of the premise; and (4) the tenant abandons the premises within reasonable time after the commission of the act.'" *Houston v. DTN Operating Co., LLC*, No. 4:17-CV-00035, 2017 WL 4653246, at *9 (E.D. Tex. 2017) (quoting *Holmes v. P.K. Pipe & Tubing, Inc.*, 856 S.W.2d 530, 539 (Tex. App.—Houston [1st Dist.] 1993, no writ). A "notice of eviction followed by vacating the premises does not qualify as abandonment for a claim of constructive eviction." *Id.*

Party Favors argues that MarineMax substantially interfered with the use and enjoyment of the property on December 21, 2022, when MarineMax communicated to Party Favors that it had to stop building the commercial kitchen. (Docket Entry No. 4 at 7).  MarineMax argues that Party Favors fails to assert the elements of constructive eviction because it continued to use the leased property for four more months, from December 2022 until it vacated the premises in April 2023. (Docket Entry No. 6 at 13–14).

In support of its argument that Party Favors was not constructively evicted because it continued to use the property before surrendering it, MarineMax cites *Rust v. Eastex Oil Co.*, 511 S.W.2d 358, 361 (Tex. Civ. App.—Texarkana 1974, no writ), in which a plaintiff remained in a damaged building for approximately five months.  The *Rust* court held that for constructive eviction to take place, "the tenant must abandon the premises within a reasonable time." *Id.* The *Rust* plaintiff did not offer a justification for not remaining in the premises for five months after the landlord refused to repair the damages. *Id.*

It is undisputed that in December 2022, MarineMax communicated to Party Favors that it could not build a commercial kitchen; MarineMax terminated the Lease in March 2023; and Party Favors surrendered the leased premises in April 2023. (Docket Entry No. 2 at 15–16). As in *Rust*, Party Favors kept possession of the leased premises for an extended period, even when it "was not able to use the Property as it was in an unusable condition." (Docket Entry No. 4 at 7). "[C]ourts have repeatedly held that a mere notice to quit, followed by vacation of the premises by the tenant, does not constitute a constructive eviction, for there must be some additional feature, such as harassing incidents disturbing to the tenant's peaceful possession and occurring on the property; and that if the tenant moves out without protest, there is no eviction." *Quitta v. Fossati*, 808 S.W.2d

636, 643 (Tex. App.—Corpus Christi 1991, no pet); *DTN Operating Co.*, 2017 WL 4653246 at *9.

Party Favors has raised no issues regarding MarineMax's conduct beyond the refusal to allow the construction of the commercial kitchen. Party Favors has failed to establish a constructive eviction claim.

## IV.    Conclusion

For the reasons stated above, the court denies Party Favors's motion to remand. The court grants MarineMax's motion to dismiss the DTPA and constructive-eviction claims, without prejudice. The court denies MarineMax's motion to dismiss the breach of contract claim. Party Favors may amend its claims against MarineMax, no later than November 6, 2023.

SIGNED on October 19, 2023, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge